1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**ADISHIAN LAW GROUP, P.C.**
Christopher M. Adishian, Esq. [#172511]
Cynthia Y. Sun, Esq. [#245123]
Pacific Corporate Towers
222 N. Sepulveda Blvd., Suite 2000
El Segundo, California 90245
Phone:      (310) 726-0888
Fax:        (866) 350-0888

Attorneys for Plaintiff Ridgeline, LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RIDGELINE, LLC, a California limited liability company<br><br>            Plaintiff,<br><br>      v.<br><br>ECOARK, INC., a Delaware corporation; MAGNOLIA SOLAR INC. a/k/a MAGNOLIA SOLAR, CORPORATION, a Delaware corporation, ECOARK HOLDINGS, INC. a/k/a ZEST TECHNOLOGIES, INC., a Nevada corporation; and DOES 1-10, Inclusive,<br><br><br>            Defendants. | CASE NO.<br><br>**COMPLAINT**<br>**1.  Breach of Contract**<br>**2.  Breach of Implied Covenant of Good Faith and Fair Dealing**<br>**3.  Fraud In The Inducement**<br>**4.  Negligent Misrepresentation**<br>**5.  Quantum Meruit**<br><br>**DEMAND FOR JURY TRIAL** |

*ADISHIAN LAW GROUP, P.C.*

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

COMES NOW Plaintiff RIDGELINE, LLC ("Plaintiff" or "Ridgeline") and alleges as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over all causes of action asserted herein pursuant to 28 U.S.C §1332 (diversity).

2.      This Court has personal jurisdiction over Defendants because Ecoark consented to personal jurisdiction as set forth in paragraph 8.1 of the written contract attached to this complaint.

## INTRADISTRICT ASSIGNMENT

3.      Pursuant to Northern District of California Local Rule 3-2(c), this case should be assigned to the San Francisco and Oakland Division because the agreement at issue was signed in Greenbrae, California in Marin County.

## THE PARTIES

4.      Plaintiff is a California limited liability company with its principal place of business located at 3789 Woodbark Court, San Jose, California.  Thus, for diversity jurisdiction purposes, Plaintiff is a citizen of California.

5.      On information and belief, Defendant ECOARK, INC. ("Ecoark") is a corporation incorporated in the State of Delaware with its principal place of business located at 111 Center Street, Suite 2200, Little Rock, Arkansas.  Thus, for diversity jurisdiction purposes, Ecoark is a citizen of Delaware and Arkansas.

6.      On information and belief, on March 28, 2016, Ecoark merged with Magnolia Solar Corporation, a publicly traded company (aka Magnolia Solar, Inc.) (Ticker OTC: "MGLT").

7.      On information and belief, Magnolia Solar Corporation is a corporation incorporated in the State of Delaware with its principal place of business located at 54 Cummings Park, Woburn, Massachusetts 01801.  Thus, for diversity jurisdiction purposes, Ecoark is a citizen of Delaware and Massachusetts.

ADISHIAN LAW GROUP, P.C.

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

8.    Magnolia Solar Corporation is a successor to Ecoark, Inc.

9.    On or around March 28, 2016, Magnolia Solar Corporation changed its name to Ecoark Holdings, Inc.

10.    Ecoark Holdings, Inc. is a Nevada corporation, with its principal place of business located at 3333 S. Pinnacle Hills Parkway, Rogers, Arkansas 72758.  Thus, for diversity jurisdiction purposes, Ecoark Holdings, Inc. is a citizen of Nevada and Arkansas.

11.    Ecoark Holdings, Inc. is a successor to Ecoark, Inc.

12.    On or around April 22, 2016, Ecoark Holdings, Inc. changed its symbol to (Ticker OTC: "EARK")

13.    On information and belief, Ecoark Holdings, Inc. subsequently changed its ticker symbol to (Ticker OTCQX: "ZEST").

14.    On information and belief, on or around March 14, 2018 as part of its 8-K filing with the Securities Exchange Commission ("SEC"), Ecoark Holdings, Inc. announced that it will be changing its name to Zest Technologies, Inc.

15.    Zest Technologies, Inc. is a successor to Ecoark, Inc.

16.    At all relevant times, Jeff Silver ("Jeff"), an individual, was and is the sole member of Ridgeline.

17.    At all relevant times, Randy May, was the CEO or President of Ecoark, Inc., Ecoark Holdings, Inc. and Zest Technologies, Inc.

18.    Plaintiff is ignorant of the true names and capacities, whether individual, corporate, associate or otherwise, of defendants sued herein as Does 1 through 10, inclusive, and therefore sues said defendants by such fictitious names.  Plaintiff is informed and believes and, upon such information and belief, alleges that each of the defendants designated as a Doe is legally responsible in some manner for the events and happenings referred to herein and caused the damages proximately thereby to Plaintiff as hereinafter alleged.  Plaintiff will

ADISHIAN LAW GROUP, P.C.

seek leave of court to amend this complaint to show the true names and capacities of said Doe defendants when same have been ascertained.

19.    Plaintiff is informed and believes and, based on that information and belief, alleges that, at various times herein mentioned, each of the defendants was the agent, either direct, ostensible or otherwise, servant, representative of employee of each of the remaining defendants and, in engaging in certain acts hereinafter alleged, was acting within the course and scope of said agency, service, representation, or employment and materially assisted the other defendants.  Plaintiff is further informed and believes and, based on that information and belief, alleges that each of the defendants ratified the acts of the remaining defendants.

## STATEMENT OF FACTS

20.    On or about January 1, 2015, Jeff on behalf of Ridgeline and Randy May on behalf of Ecoark entered into a written contract for advice and consulting services ("Agreement"), a copy of which is attached to this complaint as **Exhibit 1** and incorporated herein.

21.    As consideration for providing advisory services to Ecoark, Ecoark agreed to pay consulting fees to Ridgeline.

22.    As further separate consideration, Ecoark promised to deliver to Ridgeline "a warrant to purchase equity ("Equity Participation") equal to 2.0% of Ecoark's shares (as of the earlier of the termination date or the end of the vesting period)." (**Ex. 1**)

23.    The Agreement stated that "Equity Participation will vest on a per-diem basis from the date of the Agreement through December 15, 2015."

24.    The Agreement further promised Ridgeline that "[f]or the common stock underlying the Equity Participation, Ridgeline shall receive piggy back registration rights on terms no less favorable than for any other shareholder."

25.    Ridgeline provided advisory services to Ecoark under the

ADISHIAN LAW GROUP, P.C.

Agreement.

26.   Pursuant to the Agreement, the engagement was not terminated by either party.

27.   In fact, Ridgeline provided advisory services to Ecoark pursuant to the Agreement that lasted beyond December 2015.

28.   Therefore, the warrant for 2.0% of the Ecoark shares as of December 31, 2015 vested to Ridgeline pursuant to the Agreement.

29.   As referenced above, on or about March 28, 2016, Ecoark merged with Magnolia Solar Company.

30.   Magnolia Solar Company then changed its name to Ecoark Holdings, Inc.

31.   On or about June 6, 2016, Ecoark issued a letter to its shareholders regarding the merger. ("June 6, 2016 Shareholder Letter")

32.   The June 6, 2016 Shareholder Letter states **"If you purchased shares of Ecoark, Inc. as an investor in a privately-held company, these shares were originally issued to you in the form of a stock certification issued by Ecoark, Inc.** (the "Ecoark Shares")."

33.   The June 6, 2016 Shareholder Letter also states "These stock certificates represented your investment in the private company."

34.   The June 6, 2016 Shareholder Letter also states "The shares of Ecoark, Inc. represented by the certificate you held were exchanged for [Ecoark Holdings, Inc.] shares on a 1 for 2 basis."

35.   The June 6, 2016 Shareholder Letter also states "[t]hat means that as per the merger agreement, for 2 shares of Ecoark, Inc. you received 1 share of EARK."

36.   The June 6, 2016 Shareholder Letter also states **"As a result of the merger, therefore, 2 shares of the privately held Ecoark, Inc. were converted to one share of publicly traded company Ecoark Holdings, Inc."**

5

37.     The June 6, 2016 Shareholder Letter also states "The shares you own as a result of this exchange are shown as 'Book' shares on the statement."

38.     As a result of Ecoark's wrongful conduct, Ridgeline was unable to purchase shares of Ecoark when the warrant vested and has suffered damages, including but not limited to, compensatory, incidental, and consequential damages.

39.     Jeff attempted to resolve this dispute with Ecoark informally given his professional relationship.

40.     After months of back and forth, on or around January 26, 2017, Jeff reached out to the Ecoark Holding's CFO, Greg Landis.

41.     Landis informed Jeff that Landis has not "seen anything related to the warrant you mention."

## FIRST CAUSE OF ACTION

(Breach of Contract Against All Defendants)

42.     Plaintiff realleges and incorporates herein by reference all of the allegations set forth in paragraphs 1 through 42 as though fully set forth herein.

43.     On or about January 1, 2015, Ridgeline and Ecoark entered into a written contract for advice and consulting services. (**Ex. 1**)

44.     One of the express terms of the contract is that Ecoark would provide a warrant to purchase equity equal to 2.0% of Ecoark's shares, exercisable at a total price of one million dollars, representing a strike price valuation of fifty million dollars ($50,000,000).

45.     Ridgeline has fully performed all covenants and conditions of the contract.  Ridgeline has performed all obligations to defendants except those obligations Ridgeline was prevented or excused from performing.

46.     Ecoark breached the contact by failing to deliver the warrant to Ridgeline as required by the terms of the contract.

47.     As a direct and proximate result of the material breaches of the

ADISHIAN LAW GROUP, P.C.

contract by defendants by failing to provide a warrant for shares in Ecoark to Ridgeline, Ridgeline has been damaged in a sum not yet fully ascertained but believed to be in excess of $75,000.

48.    In addition to damages, Ridgeline also seeks specific performance in the form of an order directing Defendants to either (a) deliver the warrant to Ridgeline and permit Ridgeline to exercise the warrant in conformity with its terms or (b) deliver to Ridgeline the number of shares based on a full exercise of the warrant.

## SECOND CAUSE OF ACTION

### (Breach of Implied Covenant of Good Faith and Fair Dealing Against All Defendants)

49.    Plaintiff realleges and incorporates herein by reference all of the allegations set forth in paragraphs 1 through 49 as though fully set forth herein.

50.    In addition to the express provisions in the contract, implied in the contract is the covenant of good faith and fair dealing by all parties to the contract, including Ecoark.

51.    Ecoark had a duty not to unfairly interfere with the right of any other party to receive the benefits of the contract.

52.    Ecoark breached the implied covenant of good faith and fair dealing by interfering with and failing to cooperate with Ridgeline in performance of the contract, including, but not limited to, failing to deliver a warrant for shares in Ecoark to Ridgeline as provided in the contract, thereby depriving Ridgeline of the benefit of the bargain.

53.    As a direct and proximate result of the breaches of the implied covenant of good faith and fair dealing by defendants by failing to provide a warrant for shares in Ecoark to Ridgeline and failing to honor the contract, Ridgeline has been damaged in a sum not yet fully ascertained but believed to in excess of $75,000.

ADISHIAN LAW GROUP, P.C.

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

54.    In addition to damages, Ridgeline also seeks specific performance in the form of an order directing Defendants to either (a) deliver the warrant to Ridgeline and permit Ridgeline to exercise the warrant in conformity with its terms or (b) deliver to Ridgeline the number of shares based on a full exercise of the warrant.

## THIRD CAUSE OF ACTION

### (Fraud In The Inducement Against All Defendants)

55.    Plaintiff realleges and incorporates herein by reference all of the allegations set forth in paragraphs 1 through 55 as though fully set forth herein.

56.    Ecoark misrepresented that it would provide a warrant for shares in Ecoark in order to induce Plaintiff to enter into the contract for advisory services.

57.    Ecoark intended to induce Plaintiff into altering its position to its injury or risk by inducing Plaintiff to enter into the contract and to provide services for Ecoark's benefit.

58.    Ecoark never intended to provide any warrants for shares in Ecoark to Plaintiff and knew at the time the contract was made that Ecoark never intended to provide warrants for shares in Ecoark to Plaintiff as promised.

59.    Plaintiff reasonably relied on the misrepresentations described herein and entered into the contract and provided the services as required.

60.    As a direct and proximate result of Defendants' false representations, as described herein, Plaintiff has suffered compensatory damages, and other direct, incidental, and consequential damages, in an amount no less than $75,000, plus interest thereon at the maximum rate allowed by law, or in a greater amount to be proven at trial.

61.    In committing the acts herein alleged, Defendants acted with oppression, fraud, malice, and in conscious disregard of the rights of Plaintiff, in that Defendants had no intention of providing warrants to Plaintiff as promised,

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

ADISHIAN LAW GROUP, P.C.

and yet induced Plaintiff into entering into a written contract with Defendants for advisory services.  Plaintiff is therefore entitled to punitive damages against Defendants according to proof at the time of trial.

## FOURTH CAUSE OF ACTION

### (Negligent Misrepresentation Against All Defendants)

62.     Plaintiff realleges and incorporates herein by reference all of the allegations set forth in paragraphs 1 through 62 as though fully set forth herein.

63.     Ecoark misrepresented that it would provide a warrant for shares in Ecoark in order to induce Plaintiff to enter into the contract for advisory services.

64.     Ecoark made the misrepresentations without any reasonable ground for believing them to be true.

65.     Ecoark intended that Plaintiff rely on the misrepresentations by inducing Plaintiff to enter into the contract and to provide services.

66.     Plaintiff reasonably relied on the misrepresentations described herein and entered into the contract and provided the services.

67.     As a direct and proximate result of Defendants' false representations, as described herein, Plaintiff has suffered compensatory damages, and other direct, incidental, and consequential damages, in an amount no less than $75,000, plus interest thereon at the maximum rate allowed by law, or in a greater amount to be proven at trial.

## FIFTH CAUSE OF ACTION

### (For Quantum Meruit Against All Defendants)

68.     Plaintiff realleges and incorporates herein by reference all of the allegations set forth in paragraphs 1 through 68 as though fully set forth herein.

69.     Ecoark requested in writing and orally that Plaintiff provide consulting services for the benefit of Ecoark.

70.     Plaintiff provided the consulting services to Ecoark as requested and

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

ADISHIAN LAW GROUP, P.C.

Ecoark has benefitted from them.

71.   Plaintiff has not been paid in full for its consulting services by Ecoark because Ecoark failed to provide a warrant for shares in Ecoark as agreed by the parties.

72.   As a result of Ecoark's failure to fully compensate Plaintiff for its services, Plaintiff has suffered damages in excess of $75,000.

73.   In addition to damages, Ridgeline also seeks specific performance in the form of an order directing Defendants to either (a) deliver the warrant to Ridgeline and permit Ridgeline to exercise the warrant in conformity with its terms or (b) deliver to Ridgeline the number of shares based on a full exercise of the warrant.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff RIDGELINE, LLC prays for judgment as follows:

FOR THE FIRST THROUGH SECOND AND FOURTH CAUSES OF ACTION:

1.  Compensatory damages according to proof including all actual, incidental and consequential damages as allowed by law; and;

2.  Attorney's fees as provided by contract and by applicable law; and

3.  General damages according to proof; and

4.  Interest, including pre-judgment interest, thereon at the legal rate, including but not limited to *Civil Code* §3291; and

5.  Specific performance in the form of an order directing Defendants to either (a) deliver the warrant to Ridgeline and permit Ridgeline to exercise the warrant in conformity with its terms or (b) deliver to Ridgeline the number of shares based on a full exercise of the warrant; and

6.  Costs of suit incurred herein; and

ADISHIAN LAW GROUP, P.C.

7. Such other and further relief as to the Court may deem just and proper.

FOR THE THIRD CAUSE OF ACTION:

1. Compensatory damages according to proof including all actual, incidental and consequential damages as allowed by law; and;

2. General damages according to proof; and

3. Interest, including pre-judgment interest, thereon at the legal rate, including but not limited to *Civil Code* §3291;

4. Punitive damages in a sum to be proven at trial;

5. Costs of suit incurred herein; and

6. Such other and further relief as to the Court may deem just and proper.

FOR THE FIFTH CAUSE OF ACTION:

1. Compensatory damages according to proof including all actual, incidental and consequential damages as allowed by law;

2. Specific performance in the form of an order directing Defendants to either (a) deliver the warrant to Ridgeline and permit Ridgeline to exercise the warrant in conformity with its terms or (b) deliver to Ridgeline the number of shares based on a full exercise of the warrant; and

3. Costs of suit incurred herein; and

4. Such other and further relief as to the Court may deem just and proper.

Dated: June 19, 2018                    **ADISHIAN LAW GROUP, P.C.**

By:


/s/ Christopher M. Adishian
CHRISTOPHER M. ADISHIAN
CYNTHIA Y. SUN
Attorneys for Plaintiff
RIDGELINE, LLC

ADISHIAN LAW GROUP, P.C.

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff RIDGELINE, LLC demands a trial by jury as to all claims triable by a jury as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

Dated:  June 19, 2018                    **ADISHIAN LAW GROUP, P.C.**

By:


/s/ Christopher M. Adishian
CHRISTOPHER M. ADISHIAN
CYNTHIA Y. SUN
Attorneys for Plaintiff
RIDGELINE, LLC

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

# EXHIBIT 1

# EXHIBIT 1

## ADVISORY AGREEMENT

This Advisory Agreement (the "Agreement") effective January 1, 2015 (the "Effective Date") is made by and between EcoArk, Inc., a corporation ("EcoArk" or "the Company") and Ridgeline LLC ("Ridgeline"), a California limited liability corporation.

1 **Advisory:**

In return for consideration defined below, Ridgeline shall provide advice and consultation to the Company until December 31, 2015, or through the Company's initial public offering of securities, whichever occurs first. Ridgeline shall provide strategic advice and input on any topic requested by the Company's senior management, including corporate and financial strategies, valuation advice, and corporate positioning. Ridgeline shall also assist on capital raises and M&A opportunities, including assistance with creation of presentation materials for Company to use with investor prospects and other counterparties. A partial list of such Ridgeline activities is included as Exhibit A to this agreement. Ridgeline's advice is focused on assisting the Company to enhance valuation and investor attractiveness. General release of written materials by Ridgeline shall be reviewed and approved by the Company in advance.

2 **Reporting:**

Ridgeline shall report to Mr. Randy May, CEO.

3 **Expenses**

EcoArk shall reimburse Ridgeline for all direct out-of-pocket expenses including travel, parking, etc. as required. Such expenses must be pre-approved in writing (E-mail is an acceptable writing) by the Company.



JS _____

RM _____

1

4   **Equity Participation:**

For Ridgeline's ongoing advice, a warrant to purchase equity ("Equity Participation") equal to 2.0% of EcoArk's shares (as of the earlier of the termination date or end of the vesting period), exercisable at a total price of US One Million Dollars (US$1,000,000), representing a strike price valuation of $50M.  These warrants shall have a term of ten (10) years from the date of this agreement. Equity Participation will vest on a per-diem basis from the date of this agreement through December 31, 2015. For the common stock underlying the Equity Participation, Ridgeline shall receive piggy back registration rights on terms no less favorable than for any other shareholder.

5   **Consulting Fees:**

Upon execution, EcoArk shall pay Ridgeline $20,000.  Beginning February 15, 2015, while this agreement is in effect, EcoArk shall pay Ridgeline a monthly fee equal to $5,000 per month (unless later modified), along with a consulting bonus equal to 1.0% of any capital raise or 0.5% of any M&A transaction in which Ridgeline assists EcoArk, subject to a cap of $200,000 (double if Ridgeline is the introducing party).

6   **Termination:**

Either Party hereto may terminate this Agreement upon written notice to the other Party for any reason or no reason.  In the event of termination, additional Equity Participation vesting for Ridgeline shall cease as of the date of termination, and neither party shall have any further obligations under this Agreement.

7   **Relationship of the Parties:**

Ridgeline is an independent contractor and not an agent, nor shall it be deemed an employee of EcoArk for any purposes including those related to income tax withholding, FICA taxes, unemployment benefits and insurance coverage or otherwise.  Ridgeline shall not enter into any agreement or incur any obligations on the Company's behalf, or commit the Company in any manner without the Company's prior written consent.

2

JS _____         RM_____

8 **Miscellaneous:**

8.1 This Agreement shall be governed by and construed in accordance with the laws of Arkansas. The Parties consent to personal jurisdiction of the federal and state courts within California and service of process being effective by registered mail sent to the addresses set forth below.

8.2 This Agreement may not be and shall not be deemed or construed to have been modified, amended, rescinded, canceled or waived in whole or in part, except by written instruments signed by the Parties hereto.

8.3 This Agreement constitutes and expresses the entire agreement and understanding between the Parties with respect to the statement of work. All previous discussions, promises, representations and understandings between the Parties relative to this Agreement, if any, have been merged into this document. The terms and provisions of this Agreement shall be binding on and inure to the benefit of the Parties, their heirs, legal representatives, successors and assigns.

IN WITNESS WHEREOF, the Parties have executed this Advisory Agreement as of the date set forth above.

**Ridgeline LLC**                                    **EcoArk Inc.**

300 Drakes Landing                          3333 Pinnacle Hills Parkway
Suite 200A                                          Suite 220
Greenbrae, CA 94904                        Rogers, AR 72758

By: _____          By: _____
Jeff Silver, Managing Partner             Randy May, Chairman & CEO

JS _____                                                                RM _____

3

# Exhibit A
### (Recommended, In-process, or TBD)

## A. Financial Structuring [Immediate]:

1. **Corporate Entity Restructuring**
   a. Combine low-tech entities which have lower valuation multiples, and leave tech companies pure tech:
      i. Low-Tech (Pioneer and OCC Contract)
      ii. Hi-Tech (Intelleflex, Eco3D, Eco360 becomes tech/licensing Co.)
         1. Syphon as much income off OCC into Eco360 as license payment

   *Note: This should be done in QuickBooks formally.*

2. **GAAP Adjustments to Historical Financials**
   a. Determine Software expenses eligible for capitalization per SFAS 2
   b. Formally move all such 'expenses' to Balance Sheet as an Asset
   c. Amortize expenses beginning when placed into service (Intelleflex/Zest, Jan 2015)

   *Note: This should be done in QuickBooks formally.*

3. **Internal Reallocations to Historical and Forecast Financials**
   a. Create R&D bucket for all subs
   b. Create Payroll and Consulting bucket within R&D bucket for each sub
   c. Place as much payroll and consulting into R&D for each sub
   d. Put as much COGS and OpEx (Sales & Marketing and G&A) into R&D for each sub

   *Note: This should be done in QuickBooks formally.*

4. **Pro Forma Adjustments to Historical Financials**
   a. Re-allocate 2012-2014 Intelleflex Investment (loss) to Balance Sheet
   b. Re-allocate 2012-2014 EcoArk Investment (loss) to Balance Sheet

   *Note: No change in QuickBooks, just in Investor Presentation materials.*

5. **Pro Forma Adjustments to Forecast Financials – Exclude R&D expense from P&L**

   *Note: No change in QuickBooks, just in Investor Presentation materials.*

JS 

4

RM

**B. Valuation and Pro Forma Valuation Excluding R&D [Immediate]:**

1. Comparable Company Analyses
2. Comparable Precedent M&A Transaction Analyses
3. DCF Model

**C. Investor Package – Financials (Items in A. above, plus) [Immediate]:**

1. Summary Level Financials
2. Summary Pro Forma P&L, excluding R&D
3. P&L By Stage – Development & Commercialization
   a. Intelleflex Commercialization begins 2015

**D. Investor Package – Narrative [Immediate]:**

1. Draft Executive Summary with Financial Model inserts, and Financial Appendices
2. Edit and Restructure Business Plan and Financial Overview

**E. Financial Modeling Assistance [On-going]:**

1. **Work with each sub to prepare Revenue Model with following drivers:**
   a. Type of product or service sold by month
   b. Unit price of associated product or service
   c. Gross Revenue
   d. COGS by type of product or service

2. **Prepare Financial Model Template for Board Level Use**
   a. Combine Historical and Forecast Financials into One Model
   b. Actuals replace Forecast amounts each month
   c. Monthly Actual vs. Forecast schedules
   d. Pro Forma P&L excluding R&D (as if R&D was classified as an Asset)

**F. Other [On-going]:**

1. Make available Ridgeline / Jeff Silver bio for use as "Corporate Finance" Exec.
2. Assist Key Management with other items, as requested
3. Work on continued basis to streamline and improve Financial Models for Board Use
4. Assist on Capital Raise Strategy, Due Diligence Requests, and Investor Discussions, as requested.

JS _____

5

RM _____